STATE OF NORTH CAROLINA　　　　　IN THE GENERAL COURT OF JUSTICE
　　　　　　　　　　　　　　　　　　　SUPERIOR COURT DIVISION
COUNTY OF ALAMANCE　　　　　　　　FILE NO.: 18CVS438

MONTRENA HADLEY,

　　　　Plaintiff,

v.

CITY OF MEBANE, DAVID CHEEK, individually and in his official capacity as City of Mebane City Manager; CHRISTOPHER ROLLINS, individually and in his official capacity as City of Mebane Assistant City Manager; ESTHER BENNET, individually and in her official capacity as City of Mebane Human Resources Director and Risk Manager,

　　　　Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiff, Montrena Hadley, pro se, complaining of the Defendants, alleges and says:

## NATURE OF THE CASE

1. This is a civil action seeking compensatory damages and equitable relief under Title VII of the Civil Rights Act of 1964, § 706(f) (42 U.S.C.A. § 2000e-5(f)), 42 U.S.C. Section 1981, 42 U.S.C. Section 1983.

## PARTIES

2. Plaintiff Montrena Hadley (hereinafter "Hadley" or "Plaintiff") is a citizen and resident Alamance County, North Carolina.

3. Defendant, The City of Mebane (hereinafter "Defendant City") is a body politic and corporate, organized and existing under the laws of the State of North Carolina, capable of

suing and being sued, and having, upon information and belief, no immunity to Plaintiff's claims.

4. Upon information and belief, Defendant David Cheek, City Manager of the City of Mebane, North Carolina (hereinafter "Defendant Cheek"), is a citizen and resident of Alamance County, North Carolina, suffering no legal disability. Defendant Cheek was at all relevant times mentioned herein authorized to act on behalf of the Defendant City and is hereby sued individually and in his official capacity as City Manager of Defendant City.

5. Upon information and belief, Defendant J. Christopher Rollins, Assistant City Manager of the City of Mebane, North Carolina (hereinafter "Defendant Rollins") is a citizen and resident of Alamance County, North Carolina, suffering no legal disability. Defendant Rollins was at all relevant times mentioned herein authorized to act on behalf of Defendant City and is hereby sued individually and in his official capacity as Assistant City Manager of Defendant City.

6. Upon information and belief, Defendant Esther Bennet, Human Resources Director and Risk Manager of the City of Mebane (hereinafter "Defendant Bennet") is a citizen of Alamance County, North Carolina, suffering no legal disability. Defendant Bennett was at all relevant times mentioned herein authorized to act on behalf of the Defendant City and is hereby sued individually and in her official capacity as Human Resources Director and Risk Manager of Defendant City.

7. Plaintiff reserves the right to join additional parties as defendants upon discovery of evidence indicating additional tortfeasors unknown to Plaintiff prior to the filing of this action.

## EXHAUSTION OF REMEDIES

8. On or around May 9, 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in Greensboro, NC charging Defendants with specific acts of discrimination and/or harassment under Title VII and the Equal Pay Act (EPA). This complaint was filed with the EEOC within 180 days after the unlawful employment practice occurred. Plaintiff repleads the charges and allegations set forth in her initial complaint, a copy of which is attached hereto as **Exhibit 1** for incorporation by reference.

9. Plaintiff's complaint was thereafter assigned EEOC Charge No. 435-2017-00491.

10. On December 4, 2017, Plaintiff received a "Dismissal and Notice of Rights" letter from the EEOC which informed her that they were unable to conclude any violations of the statutes had occurred and gave Plaintiff notice of the right to institute civil action within 90 days after receipt of notice. A copy of the notice is attached as **Exhibit 2**.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over all parties and matters in controversy herein, and they are properly before the Court pursuant to the applicable provisions of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, and 28 U.S.C. §§ 1331, 1376, and 1446.

## FACTUAL ALLEGATIONS

12. Plaintiff was hired as the Planning Director, a supervisory position in charge the Planning, Inspection, and Zoning Departments for the City of Mebane on March 5, 2001 by former City Manager Robert Lee Wilson.

13. Defendant City is an entity covered under 42 U.S.C. § 2000e subject to Title VII.

14. Plaintiff is an African American female.

15. When Plaintiff was hired, she became the first black department head as well as the first black female department head for the City of Mebane.

16. Plaintiff remained the only black department head for the Defendant City until Terrance Caldwell was promoted to police chief in 2006.

17. As Planning Director, Plaintiff was required her to be diligent with training to stay informed and knowledgeable in applicable laws and ordinances; she was responsible for maintaining the daily operations of the Planning and Zoning Department; reviewing and approving development applications for central permitting; reviewing and approving annexation, easement plats, subdivision plats and plans and enforces zoning, land use, landscape, flood, subdivision ordinances, and code enforcements; oversaw special projects and served as a planner for long-range planning.

18. Plaintiff oversaw the Mebane Planning Board, also serving as the Board's clerk, facilitating meetings and serving as a liaison to City boards in furtherance of planning for land development according to the 2010 Land Development Plan.

19. Defendant Cheek was hired as Finance Director/Assistant City Manager for the City of Mebane in 2009 under then-City manager Robert Wilson.

20. Upon information and belief, Defendant Bennett, a white female holding a Bachelor's of Arts degree in Psychology and a Master's of Arts in Education, was hired as Defendant City's Human Resources Director and Risk Manager in 2009. Defendant Bennett's responsibilities include recruitment, selection, employee relations, position classification, compensation, benefit management, employee development, and personnel records management.

21. While working full-time for Defendant City, Plaintiff completed the Municipal and County Administration Course held at the UNC School of Government in Chapel Hill, a

course designed for city and county managers, department heads, and other city or county officials which took place in seven sessions of four days each between September 2010 and April 2011 and required participants to attend at least 80% of all classes and complete quizzes and assignments.

22. Plaintiff is a North Carolina Certified Zoning Official, a member of the North Carolina Association of Zoning Officials, and a member of the North Carolina Planning Association.

23. In the years Plaintiff worked as Planning Director under former City Manager Robert Wilson, repeated promises were made to Plaintiff that, because of the extensive amount of work and responsibility delegated to her department, she would eventually be able to hire one or more employees to supervise and train in order to accommodate the needs of the department.

24. Under former City Manager Robert Wilson, no additional positions were created or budgeted under the Planning Director to assist with the demand of the department.

25. Defendant Cheek was chosen to replace Robert Wilson as Mebane City Manager following Wilson's retirement in December 2012, opening a vacancy for the Assistant City Manager position.

26. Defendant Cheek is a policymaker for Defendant City.

27. Defendants Cheek, Rollins, and Bennett were at all times mentioned herein acting under the color of their authority, and under the color of statutes, ordinances, customs, and policies of the City of Mebane, Alamance County, North Carolina.

28. The City Manager has the authority to hire and fire City employees.

29. After more than a decade serving as the City of Mebane Planning Director, Plaintiff applied for the Assistant City Manager position, which oversees Public Works,

Planning, Inspections, and Zoning; Plaintiff secured an interview with Defendant Cheek, who denied her the position.

30. Plaintiff graduated *magna cum laude* with a Bachelor of Arts degree in Public Administration.

31. Plaintiff has earned her Master of Public Administration degree (MPA); is one of only two city employees with a Master's degree; and is the only employee with a Master's degree in a field which corresponds to her assigned job description and duties.

32. Defendant Cheek instead hired Defendant Rollins, a white male who, after graduating from NC State with a bachelor of science degree in civil engineering, was hired by the City of Graham, North Carolina as an engineering and administrative assistant and remained with the city to become an administrative development director, Graham's Assistant City Manager, and then City Manager following his predecessor's retirement.

33. A local online news article published December 4, 2012 gave details of Defendant Rollins' transition from Graham following his selection as Assistant City Manager to Mebane, "where he will work under City Manager David Cheek, with whom he has been friends for many years. Cheek once served as Alamance County Manager, working within a stone's throw of Graham's municipal building." Further, Rollins is quoted saying of Cheek, "[w]e have a lot in common... We've worked on things together. He has a financial background and I have the engineering background."[1]

34. Defendant Rollins is not, and has never been, a licensed Professional Engineer.

35. Defendant Cheek was quoted in a November 21, 2012 news article published online with The News of Orange County saying of Defendant Rollins, "I was glad to offer him the job."

---
[1] http://www.thetimesnews.com/20121204/frankie-maness-named-graham-city-manager/312049827

36. In January 2013, Defendant Rollins began working as the Assistant City Manager, overseeing Plaintiff, who had been serving as the City Planning Director since 2001.

37. In 2014, the City approved a proposal to add a "Special Projects Coordinator" position in the Planning Department, but the City did not hire anyone for the job.

38. In 2015, Defendant Cheek eliminated the "Special Projects Coordinator" position and instead proposed a position for "Planning Officer."

39. In 2014, Plaintiff's job was reclassified from Planning Director to Planning Officer, but Plaintiff's duties and responsibilities did not change.

40. Upon information and belief, no other city employees were reclassified.

41. Defendants' reclassification of Plaintiff's job title was an arbitrary and capricious adverse employment action against Plaintiff.

42. Defendant Cheek explained to Plaintiff that the reason for changing her title to Planning Officer was because members of City Council "didn't think she could get the job done."

43. Plaintiff adequately and effectively performed all of her job duties.

44. Plaintiff was capable of, and in fact did, continue to successfully perform all of her job duties.

45. Plaintiff was singled out and treated differently than every other city employee.

46. By reclassifying Plaintiff as a Planning Officer, Plaintiff

47. Upon information and belief, Plaintiff was subjected to disparate treatment because of her race.

48. Upon information and belief, Plaintiff was subjected to disparate treatment because of her color.

49. Upon information and belief, Plaintiff was subjected to disparate treatment because of her sex.

50. Instead of promoting equal opportunities for employment, Defendant City, by and through its agents, arbitrarily and capriciously sought pre-selected candidates to fill vacancies to the detriment of Plaintiff.

51. Defendant City is knowingly and actively engaging in employment policy, practice, and/or patterns which impedes equal access and opportunity to similarly situated candidates such as Plaintiff.

52. Defendant City's policy, practice, and/or patterns violate the due process rights of similarly situated prospective employees.

53. On or around October 28, 2016, Defendant Cheek called Plaintiff into his office and her that he was "thinking about going in another direction" in regards to the Planning Department and that he "wanted to take it to a different level" and that he was working on writing a description for a new position for either a "Director" or "Manager."

54. Plaintiff, who was the Planning Director for Defendant City for over a decade, was unaware if or when she would have an opportunity to apply for the new position.

55. On or around November 5, 2016, Defendant Cheek told Plaintiff that a job for "Development Director" was posted on the City website.

56. Unlike most other employment vacancies with the City, the Development Director position was not posted on the internal employee list serve.

57. Plaintiff applied for the Development Director position and was interviewed by Defendant Rollins and Defendant Bennett on or about January 12, 2017.

58. During the interview, Defendants Rollins and Bennett asked Plaintiff questions that had been pre-printed on a sheet or sheets of paper for the interview.

59. After Defendants Rollins and Bennet asked all of the questions from the pre-printed sheets, Defendant Rollins took out his cell phone and began to ask Plaintiff additional questions that were, upon information and belief, not asked of any other applicants who interviewed for the position.

60. Upon information and belief, Defendant Rollins prepared in advance additional interview questions that he knew would be difficult for Plaintiff to answer, and that were specifically and intentionally designed to be to obstruct Plaintiff's ability to get the job.

61. Upon information and belief, Defendant Rollins actively, purposefully, and intentionally created a more burdensome hiring process for Plaintiff that other similarly situated candidates were not subjected to.

62. Defendant Bennett knew or should have known that Defendant Rollins was purposefully and intentionally creating a more burdensome hiring process than other similarly situated candidates were not subjected to.

63. Defendant Bennett is responsible for ensuring an equal opportunity of employment for all candidates.

64. Upon witnessing Defendant Rollins use his phone to read additional and prepared interview questions that were not asked of other candidates, Defendant Bennett should have taken necessary action to remedy the harm caused by Plaintiff's disparate treatment.

65. Defendant Bennett knew or should have known Defendant Rollins was intentionally and purposely interfering with Plaintiff's right to fundamental fairness in the selection process.

66. Defendant Bennett acquiesced to Defendant Rollins use of additional and individualized selection criteria that similarly subjected candidates were not subject to.

67. Upon information and belief, Defendants Cheek and Rollins were the final decisionmakers for hiring the new Director.

68. Upon information and belief, Defendants never intended to consider Plaintiff for the position of Development Director, even though she possessed most if not all of the qualifications.

69. The job description Development Director had many, if not all, of the same duties and responsibilities Plaintiff had as Planning Director.

70. On January 31, 2017, Defendant Cheek sent an email announcing that Cy Stober had been hired as Development Director.

71. Upon information and belief, before Cy Stober interviewed for the Development Director position, he was told that Plaintiff would not be considered and would not be hired.

72. Upon information and belief, the Development Director position was written as means to intentionally and purposefully remove Plaintiff as a department head because of her race, color, and/or sex.

73. In announcing the selection of the Development Director, Defendant Cheek stated the following about Cy Stober: "During his time with the PTRC (Piedmont Triad Regional Counsel) he provided seventy-four communities with environmental planning services including the City of Mebane. He is well versed in GIS mapping and grant writing. He serves as the Secretary to the NC Water Resources Association and is co-director of the Stormwater Association of North Carolina (SWANC)."

74. Defendant City maintains that Stober was better qualified for the position of Development Director than Plaintiff because, in part, Stober "had experience creating GIS maps, a task which Ms. Hadley never mastered, despite her years of service with the City in the Planning Department...Rather than creating GIS maps for the City, Ms. Hadley continued to rely on one outside vendor to perform this function."

75. Upon information and belief, after Stober began working as Development Director, Defendant Cheek paid for Stober to attend GIS training.

76. Plaintiff completed GIS certification following 16 hours of training between June 23-24, 2014.

77. In or around September 2017, after Defendants became aware of Plaintiff's EEOC charges, Plaintiff received a performance evaluation from her supervisor Cy Stober, Development Director which she believed had actually been prepared, upon information and belief, by Defendant Rollins, at least in part, and included arbitrary and capricious negative comments on Plaintiff's job performance that Plaintiff contested.

78. Upon confronting Cy Stober about her concern, he did not argue with Plaintiff and agreed to delete the negative comments from her evaluation.

79. Purposely and intentionally providing false negative feedback on Plaintiff's evaluation was an adverse employment act.

80. Upon information and belief, Defendant Rollins intentionally and maliciously attempted to defame and harm Plaintiff with an arbitrary and negative performance evaluation.

81. Upon information and belief, Plaintiff is the only City employee who has been singled out and disparately treated in performance evaluations.

82. Defendant discriminated against plaintiff on the basis of her race with respect to hiring, and other terms, conditions, benefits and privileges of employment, as set forth in this complaint.

83. This discrimination was done willfully and with malicious and reckless disregard for the rights of plaintiff.

84. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged and is now suffering and will continue to suffer irreparable injury from defendant's unlawful policies and practices as set forth above unless enjoined by this court.

85. Plaintiff, because of her race, color, and/or gender, was subjected to lower pay and benefits in violation of the Equal Pay Act.

## FIRST CLAIM FOR RELIEF
(Violation of Title VII, U.S.C. § 2000e – Disparate Treatment due to Race, Color, Sex)

86. Plaintiff repleads and incorporates herein by reference the aforementioned allegations and remaining allegations set forth below.

87. Plaintiff is a member of a protected classes due to her race, color, and sex.

88. Plaintiff was a qualified candidate for the Development Director position.

89. Plaintiff sought and applied for the Development Director position.

90. Plaintiff was not hired as Development Director.

91. A white male was hired as Development Director.

## SECOND CLAIM FOR RELIEF
(Violation of Title VII, U.S.C. § 2000e – Disparate Impact due to Race, Color, Sex)

92. Plaintiff repleads and incorporates herein by reference the aforementioned allegations above and remaining allegations set forth below.

93. Defendant City's policy, practice, and patterns of conduct in employment decisions have a disproportionate impact on candidates of a different race, color, and/or gender than the agents of the Defendant City with final authority of over employment decisions.

94. Defendant Cheek's pattern in employment decisions violates due process and disproportionally impacts Plaintiff and other protected class members.

### THIRD CLAIM FOR RELIEF
(§ 1983 – Retaliation; Defendant Rollins)

95. Plaintiff repleads and incorporates herein by reference the aforementioned allegations above and remaining allegations set forth below.

96. Plaintiff participated in protected activity by filing a charge of discrimination with the EEOC.

97. Defendant Rollins purposefully and intentionally retaliated against Plaintiff by wrongfully and without good reason obstructing Plaintiff's right to a fair performance review by attempting to maliciously denounce Plaintiff's performance of her job duties.

### FOURTH CLAIM FOR RELIEF
(Violation of Right to Due Process/Violation of Constitutionally Guaranteed Liberty Interest – N.C. Const. art. I, § 19)

98. Plaintiff repleads and incorporates herein by reference the aforementioned allegations above and remaining allegations set forth below.

99. As a public employee, Plaintiff enjoys a constitutionally guaranteed protected liberty interest in the right to pursue the occupation of her choice and is entitled to due process prior to her employer undertaking any action against her that might stigmatize her and impair her right to pursue her occupation.

100. Additionally, Defendant City holds itself out to the public as an equal opportunity employer both in recruiting and hiring potential applicants, as set forth on Defendant City's

Application for Employment which states, "*An Equal Opportunity Employer*" (original emphasis) and "We consider applications for all positions without regard to race, color, religion, sex, national origin, age, marital or veteran status, the presence of a non-job-related medical condition or handicap, or any other legally protected status.

101. As a result, Plaintiff was entitled to due process or "fundamental fairness" by law throughout her employment with Defendant City and during the entirety of the hiring process for any job opportunities Plaintiff sought and/or applied for with Defendant City.

## FIFTH CLAIM FOR RELIEF
(Violation of Right to Due Process/Violation of Constitutionally Guaranteed Liberty Interest – 42 U.S.C. § 1983 – Defendant City)

102. Plaintiff repleads and incorporates herein by reference the aforementioned allegations above and remaining allegations set forth below.

103. Defendants policy, custom, or practice deprived Plaintiff of her Constitutional rights to due process and liberty.

104. Defendant Cheek is a policymaker for Defendant City, and his unlawful acts constitute municipal policy and state action.

## SIXTH CLAIM FOR RELIEF
(Violation of Right to Due Process/Violation of Constitutionally Guaranteed Liberty Interest – 42 U.S.C. § 1983 - Defendants Cheek, Rollins, and Bennett individually)

105. Plaintiff repleads and incorporates herein by reference the aforementioned allegations above and remaining allegations set forth below.

106. Defendants and each of them failed to afford Plaintiff the minimum due process requirements guaranteed to Plaintiff when Defendants interfered with Plaintiff's right to a fundamentally fair process in both hiring decisions and job classifications during employment.

107. Defendant acts were intentional and purposely discriminatory against Plaintiff.

108. Plaintiff was harmed as a direct and proximate result of all Defendants unlawful and discriminatory conduct.

109. As a proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer general damages, including physical pain and suffering, mental and emotional pain and suffering, humiliation, fear, anxiety, and loss of personal and professional reputation in an amount according to proof.

110. As a proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer general damages, including physical pain and suffering, mental and emotional pain and suffering, humiliation, fear, anxiety, and loss of personal and professional reputation in an amount according to proof.

111. By reason of the described conduct of Defendants, Defendants, and each of them, are liable to Plaintiff under 42 U.S.C.A. § 1983 for injuries suffered by Plaintiff, in that their conduct deprived Plaintiff of rights, privileges and immunities given Plaintiff by the United States Constitution and the North Carolina Constitution.

WHEREFORE, the Defendants pray the Court as follows:

1. Grant plaintiff a permanent injunction enjoining defendant, its agents, successors, employees, attorneys and those acting in concert with defendant and at defendant's request, from continuing to violate Title VII.

2. Grant Plaintiff an order requiring Defendants to make Plaintiff whole by awarding Plaintiff placement into the position Plaintiff would have occupied in the absence of the unlawful retaliation and/or discrimination by Defendant(s) based on Plaintiff's race, color and/or gender,

with the same seniority, leave and other benefits of the position (or front pay), back pay (with interest), compensatory damages for emotional distress, and/or nominal damages.

3. Award Plaintiff such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, and, if applicable, attorney's fees and expenses.

4. For other actual or consequential damages which Plaintiff may prove at trial;

5. For such other and further relief as to the Court seems just and proper.

This the 5th day of March, 2018.

*Montrena Hadley*
MONTRENA HADLEY, PRO SE
212 Kit Lane
Mebane, NC 27302

North Carolina Alamance County

I, Michael D Reaves, a notary public for Alamance, North Carolina, do hereby certify that Montrena Hadley personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this the March 5th 2018

*MDR*

My Commission expires August 5 2022

MICHAEL D. REAVES
NOTARY PUBLIC
ALAMANCE COUNTY, NC
MY COMMISSION EXPIRES AUGUST 5, 2022