IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MONTRENA HADLEY,                  )
                                  )
            Plaintiff,            )
                                  )
    v.                            )        1:18CV366
                                  )
CITY OF MEBANE, DAVID CHEEK,      )
CHRISTOPHER ROLLINS, and          )
ESTHER BENNETT,                   )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on Defendants City of Mebane ("the City"), David Cheek, Christopher Rollins, and Esther Bennett's Partial Motion to Dismiss. (Doc. 18.) Defendants filed a brief in support of their motion, (Doc. 19). Plaintiff Montrena Hadley has responded, (Doc. 26), and Defendants have replied, (Doc. 29). This matter is ripe for resolution and for the following reasons, this court finds that Defendants' Partial Motion to Dismiss will be granted. Defendants do not challenge Plaintiff's First Claim as to the City or Plaintiff's Third Claim to the extent that Plaintiff alleges a violation of her right to equal protection from discrimination based on race and/or sex. (Doc. 19.)

## I.   PARTIES AND FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiff, are as follows.

### A.   Parties

Plaintiff Montrena Hadley is an African-American female employee of Defendant, City of Mebane, North Carolina (the "City"). (Am. Compl. (Doc. 13) ¶¶ 2, 14, 16.) The City hired her as a Planning Director in 2001. (Id. ¶ 16.)[1] The Planning Director is a supervisory position and serves as the head of the City's Planning and Zoning Department. (Id.) Plaintiff was the City's first and only black department head until 2006. (See id. ¶ 21.) She was the City's only black female department head until Defendants replaced her with a white male in 2017. (Id. ¶ 22.)

Defendant David Cheek is a white male whom the City has employed since 2009. (Id. ¶¶ 4, 40.) Cheek served as Assistant City Manager until 2012 and has served as City Manager since then. (Id. ¶¶ 4, 44.) Defendant Christopher Rollins is a white

_____

[1] Former City Manager, Robert Lee Wilson, hired Plaintiff. (Am. Compl. (Doc. 13) ¶ 16.)

male whom the City has employed as Assistant City Manager since 2013. (Id. ¶ 5.) Defendant Esther Bennett, (collectively with Cheek and Rollins, "Individual Defendants"), is a white female whom the City has employed as Human Resources Director and Risk Manager since 2009. (Id. ¶ 6.) Plaintiff sues Individual Defendants in their individual and official capacities. (Id. ¶¶ 4-6.)

## B. **Plaintiff's Equal Employment Opportunity Commission (EEOC) Charge**

A plaintiff "alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005). Plaintiff must "describe generally the action or practices complained of." Id. at 508 (quoting 29 C.F.R. § 1601.12(b) (2004)). A plaintiff's Title VII claims in court, however, may not "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. (quoting Dennis v. Cty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)). Because Plaintiff's EEOC Charge necessarily circumscribes what Plaintiff may now plead, the court will begin with that Charge.

In her May 9, 2017 EEOC Charge, Plaintiff's allegations relate primarily to her not receiving a promotion. (Am. Compl.

(Doc. 13) Ex. 1, EEOC Charge (Doc. 13-1) at 1.) She alleges that she was hired by the City as a Planning Director in 2001 and has been reporting to a white male Assistant City Manager since 2013. (Id.) Plaintiff further alleges that in 2014, her "title was changed to Planning Officer, but [she] retained the same responsibilities and pay." (Id.) Finally, she claims that in 2016, the Assistant City Manager notified her that the City was hiring a Development Director, which was an external job posting. (Id.) Plaintiff charges that she applied and was interviewed for the position but was not selected. (Id.) Instead, Defendants hired a white male who was "neither more qualified nor more experienced" than Plaintiff. (Id.)

### C. **Plaintiff's Job as Planning Director**

In her position as Planning Director, Plaintiff had a variety of responsibilities, including overseeing the Mebane Planning Board, making recommendations about zoning and planning proposals, and maintaining the daily operations of the Planning and Zoning Department, among others. (Id. ¶¶ 23–25.)

In addition to those responsibilities, Plaintiff alleges that she effectively performed the responsibilities of a Zoning Administrator, regularly working fifty to sixty hours per week — more than any other salaried City employee. (Id. ¶¶ 27, 30–31.) During Plaintiff's employment with the City, the City Council

had not allocated funds to the Planning Department for additional hires to alleviate Plaintiff's workload, despite certain assurances from former-City Manager Wilson that it would. (Id. ¶¶ 34, 36–37.)

Wilson retired as City Manager in 2012, but the City did not announce a job vacancy to recruit replacement candidates. (Id. ¶¶ 42-43.) Rather, in the months leading up to Wilson's retirement, Defendant Cheek was chosen to replace Wilson, in turn creating a vacancy for Assistant City Manager. (Id. ¶ 44.) The City did not post a vacancy for the Assistant City Manager position either. (Id. ¶ 45.)

Before he retired, Wilson told Plaintiff not to pursue the Assistant City Manager position. (See id. ¶ 46.) Plaintiff nevertheless informed Defendant Cheek of her interest in the Assistant City Manager position. (Id. ¶ 47.) Cheek interviewed Plaintiff but did not offer her the position, explaining that he needed someone "more familiar with pump stations." (Id. ¶ 47.) Upon learning of Plaintiff's interview with Defendant Cheek, Wilson told Plaintiff that "she should only apply for positions in cities where minorities or women are encouraged to apply." (Id. ¶ 48.) Defendant Cheek ultimately hired his long-time friend, Defendant Rollins, as Assistant City Manager. (Id. ¶¶ 49-50.) Defendant Rollins previously served as the City

Manager for the City of Graham, North Carolina. (Id. ¶ 49.)
Plaintiff alleges that no City employee ever formally
interviewed Defendant Rollins for the position. (Id. ¶ 51.)

Plaintiff asked Defendant Bennett, the City's Human
Resources Director, if she could file a grievance or appeal of
Cheek's denial of her application for Assistant City Manager.
(See id. ¶ 54.) The City had no related policy or procedure
outlining such an appeal. (Id.) Defendant Bennett told Plaintiff
that she could ask to discuss it later but took no other action.
(Id.)

In January 2013, Defendant Rollins started as Assistant
City Manager, overseeing Plaintiff as Planning Director. (Id.
¶ 55.) Defendant Cheek and/or Defendant Rollins allegedly
approached former-City Manager Wilson after he retired to
discuss replacing Plaintiff as head of the Planning Department.
(Id. ¶ 62.) Wilson allegedly told them to wait until Plaintiff
retired. (Id. ¶ 63.) Plaintiff alleges that Defendant Rollins
did not want to work closely with Plaintiff due to her race
and/or sex, (id. ¶¶ 60-61), and subjected her to more scrutiny
than other employees under his supervision, who are all white,
(id. ¶ 58).[2] Plaintiff alleges that she is the only City employee

_____

[2] Plaintiff still works for the City. (Am. Compl. (Doc. 13)
¶ 165.)

- 6 -

"who has been singled out and disparately treated to her detriment in regards to performance evaluations and review scores." (Id. ¶ 59.)

### D. **Change in Job Title**

In the spring of 2013, Defendants worked with the Piedmont Triad Regional Council of Governments ("PTRC") to conduct a Classification and Pay Plan Study. (Id. ¶ 64.) The study allegedly found that Plaintiff was performing the duties of a Planning Officer, not a Planning Director. (Id. ¶¶ 66-67.) As a result of the Classification and Pay Plan Study, Defendants changed Plaintiff's job title in 2014, from Planning Director to Planning Officer. (Id. ¶ 65.) Plaintiff's salary and responsibilities did not change, and Plaintiff continued to act in a "supervisory role as the sole-member of the Planning & Zoning Department," despite her new role being a nonsupervisory position. (Id. ¶¶ 64-65, 77-78, 83.)[3] Plaintiff alleges that she continued to perform all the functions of the Planning Director satisfactorily after her title change to Planning Officer. (Id. ¶ 81.) She also alleges that no grievance or appeal procedure existed to allow her to challenge her job-title change. (Id. ¶ 76.)

---

[3] Despite the reclassification, the placard outside of Plaintiff's office continued to read, "Planning Director." (Id. ¶ 79.)

When Defendants changed Plaintiff's title, they contended that she was not performing several of the Planning Director's job functions and that Defendant Rollins was himself performing several of those functions. (Id. ¶¶ 66-67.) Plaintiff disputes this contention, alleging that Defendants' decision to change her job title was not based on her job performance, but rather because, as Defendant Rollins told her, "a couple of knuckleheads" on the City Council did not think she could do the job. (Id. ¶¶ 68-70.) The City Council for the City of Mebane is all-white. (Id. ¶ 71.) Plaintiff alleges that one councilman and/or his company has been subject to multiple complaints of racial discrimination, one resulting in a monetary settlement. (Id. ¶¶ 73-74.)

Plaintiff alleges that the job-title change was an "arbitrary and capricious adverse employment action." (Id. ¶ 84.) She alleges that she was subjected to disparate treatment because of her race and/or sex. (Id. ¶ 86.)

### E. Creation of the Development Director Position

A few years later, on or around October 28, 2016, Defendant Rollins told Plaintiff that he was "thinking about going in another direction" with the Planning Department and that Defendants Cheek and Bennett were drafting a description for a new "Director" or "Manager" position. (Id. ¶ 90.) On or around

November 1, 2016, Defendant Bennett posted on the City's website a job announcement for a "Development Director," made up of portions of other municipalities' job descriptions for planning director positions. (Id. ¶¶ 91-93; see also Ex. 3 (Doc. 13-3).) The Development Director's responsibilities were substantially similar to those of the City's Planning Director and Planning Officer. (Am. Compl. (Doc. 13) ¶ 97.)

Most job announcements are announced via the City's internal employee email listserv, but the Development Director position was not. (Id. ¶ 94.) Plaintiff did not know if or when she would be able to apply for the Development Director position. (Id. ¶¶ 95-96.)

Defendant Cheek and/or Defendant Rollins allegedly recruited a regional planner from the PTRC, who was a white male, for the Development Director position. (Id. ¶ 98.) That candidate declined but recommended Cy Stober, another white male, for the position. (Id. ¶¶ 98-99.) Defendants Cheek and Rollins encouraged Stober to apply, with Defendant Rollins allegedly assuring Stober that Plaintiff would not be considered seriously for the position. (Id. ¶¶ 101-02.) Plaintiff, Stober, and three other white male candidates interviewed for the position. (Id. ¶¶ 102-05.)

Defendants Rollins and Bennett interviewed Plaintiff. (Id. ¶ 103.) To obstruct Plaintiff's candidacy, Rollins allegedly asked Plaintiff questions from a list on his cell phone that were not asked to other candidates, related to skills not applicable to the position, and that Defendant Rollins knew that Plaintiff could not perform, including her ability to create GIS maps. (Id. ¶¶ 107-11.)

As the City's Human Resources Director, Defendant Bennett is allegedly responsible for ensuring equal opportunity to employment candidates. (Id. ¶ 112.) Plaintiff alleges that Defendant Bennett knew or should have known that Rollins was interfering with Plaintiff's right to fundamental fairness in the selection process. (Id. ¶ 113.)

Defendants Cheek and Rollins hired Stober as the Development Director, which Defendant Cheek announced via email on January 31, 2017, specifically noting that Stober was "well versed in GIS mapping and grant writing." (Id. ¶¶ 117, 125.) Stober is highly educated and has experience with environmental planning, but Plaintiff alleges that Stober had no experience in zoning or other code-related issues, is not a certified zoning officer, and is not qualified to be the Development Director. (Id. ¶¶ 124-27, 131.) Defendants allegedly maintained that Stober was more qualified for the Development Director position.

(See id. ¶ 132.) Among other things, Defendants said that Stober had experience creating GIS maps, which they said Plaintiff had not mastered, (id. ¶ 135); he was well versed in grant writing, (id. ¶ 125); and had more supervisory and management experience, (id. ¶ 132). Plaintiff alleges that Defendants' proffered reasons for denying her the job of Development Director and hiring Stober are false. (Id. ¶¶ 156-57.) Specifically, Plaintiff asserts that she received GIS certification in June 2014 and that the City continues to outsource the creation of GIS maps following Stober's hiring anyways, (id. ¶¶ 136-37); that she supervised interns in the Planning and Zoning Department, (id. ¶ 133); and she has more experience writing grant proposals than Stober, (id. ¶¶ 141-42). Notably, Defendants and Stober allegedly continue to rely on Plaintiff to "perform all of the work related to zoning administration" and other regulatory and planning issues. (Id. ¶¶ 128-29, 145-46, 150.) Plaintiff alleges that she performs some of Stober's duties as Development Director. (Id. ¶ 149.)

Plaintiff alleges that Defendants created the Development Director position to head the Planning and Zoning Department and that they never hired a Planning Director after reclassifying Plaintiff to Planning Officer. (Id. ¶¶ 118-19.) Plaintiff also alleges that a City councilman stated the City created the

Development Director position because the City thought Plaintiff

would "be gone by now." (Id. ¶ 151.)

Further, Plaintiff alleges that the Development Director

position was created to intentionally and purposefully remove

her as the de facto head of the Planning and Zoning Department

because of her race and/or sex. (Id. ¶ 160.) She also alleges

that hiring Stober to supplant her as the de facto head of the

Planning and Zoning Department was an adverse employment action.

(Id. ¶¶ 120-21.) Defendants denied her an opportunity to be

heard after her constructive removal. (See id. ¶ 123.)

Plaintiff alleges that City of Mebane Employee Handbook,

implemented in July 2015, states in part that no job applicant

"shall be deprived of employment opportunities or otherwise

adversely affected as an employee because of such individual's

race, color, . . . [or] sex . . . ." (Id. ¶ 161.)[4] The Handbook

also provides that, following the successful completion of a

six-month probationary period after their hiring, an employee

"may be dismissed only as provided in this policy." (Id. ¶ 162.)

Plaintiff therefore alleges that the City created an implied

employment contract protecting an employee from dismissal unless

---

[4] The Handbook explicitly states that it should not be read
to form an express or implied contract. (Am. Compl. (Doc. 13)
¶ 161.)

it is done in accordance with the Handbook's policy.[5] (See id. ¶ 163.) Plaintiff alleges that the Handbook creates an implied contract that in turn created a constitutionally protected property interest in continued employment and protection from dismissal unless in accordance with City policy. (Id. ¶¶ 163-64.)

Plaintiff alleges that, rather than promoting equal opportunities for employment, the City, through its agents, arbitrarily and capriciously sought preselected white candidates to fill vacancies to her detriment and the detriment of other similarly situated minority candidates. (Id. ¶ 166.) Plaintiff alleges that Defendants are knowingly engaging in employment policies, practices, and patterns that impede equal access and opportunity to minority candidates in violation of their due process rights. (Id. ¶¶ 167-68.)

F.    **EEOC Charge of Discrimination**

On May 9, 2017, Plaintiff filed an EEOC Charge of Discrimination, based on continuing race and sex discrimination beginning on February 20, 2017, in violation of Title VII. (EEOC Charge (Doc. 13-1) at 1.) Plaintiff's EEOC Charge alleges that the City hired a less qualified white male in January 2017 for a new position, Development Director, for which Plaintiff had

_____

[5] The details of any dismissal policy are unalleged.

interviewed. (Id.) The EEOC Charge also describes the City

changing Plaintiff's job title — with no corresponding changes

in her pay or responsibilities — from Planning Director to

Planning Officer in July 2014. (Id.) On December 1, 2017, the

EEOC mailed its Dismissal and Notice of Rights to Plaintiff,

which notified Plaintiff that the EEOC would not move forward

with her charge and informed Plaintiff that she had ninety days

to file suit. (Am. Compl. (Doc. 13) Ex. 2, Right to Sue Letter

(Doc. 13-2) at 1.) Assuming that Plaintiff received the Notice

of Rights on December 5, 2017, she had until March 6, 2018, to

file suit. (See id.)

G. **Performance Review**

Plaintiff filed her EEOC Charge of Discrimination in May

2017. (Am. Compl. (Doc. 13) ¶ 273.) In or around September 2017,

Stober conducted a performance review of Plaintiff. (Id. ¶ 274.)

Plaintiff alleges that at that time, Defendants were aware of

Plaintiff's EEOC charges. (Id.) Plaintiff alleges that Defendant

Rollins helped prepare her performance review, which "included

negative comments and criticisms regarding Plaintiff's job

performance." (Id.) The City Handbook states that "[t]he

evaluation determines if performance is satisfactory and is not

necessarily related to salary increases. Satisfactory

performance, which is documented in the evaluation process,

would be a component considered at budget time." (Id. ¶ 275.) Plaintiff confronted Stober about "her concerns that someone else had written her performance evaluation," and "Stober did not argue and agreed to delete the negative comments from her evaluation." (Id. ¶ 276.)

## H.    **Procedural History**

On March 5, 2018, Plaintiff filed her complaint in North Carolina state court. (Complaint (Doc. 2).) Shortly thereafter, Defendants removed this action to this court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, asserting that Plaintiff's complaint involves federal questions and that this court can exercise supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367(a). (See Petition for Removal (Doc. 1) at 1-3.)

On June 11, 2018, Defendants filed a motion to dismiss. (Doc. 9.) On July 2, 2018, Plaintiff filed an Amended Complaint, (Am. Compl. (Doc. 13)), mooting Defendants' first motion to dismiss, (see Order (Doc. 17)). On July 30, 2018, Defendants moved to partially dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Defs.' Partial Mot. to Dismiss ("Defs.' Mot." (Doc. 18.) Defendants filed a brief in support of their motion, (Defs.' Brief in Supp. of Partial Mot. to Dismiss ("Defs.' Br.")

(Doc. 19)); Plaintiff responded, (Corrected Resp. in Opp'n to Defs.' Partial Mot. to Dismiss ("Pl.'s Resp.") (Doc. 26)); and Defendants replied, (Defs.' Reply Brief in Supp. of Partial Mot. to Dismiss ("Defs.' Reply") (Doc. 29)).

Defendants argue that Plaintiff's Second Claim for Relief based upon disparate impact employment discrimination should be dismissed for lack of standing, failure to state a claim, and failure to exhaust administrative remedies. (Defs.' Mot. (Doc. 18) at 1.) Defendants contend that Plaintiff's federal and state due process claims – Claims Three, Four, Six, and Seven – should be dismissed for failure to allege deprivation of a constitutionally protected interest. (Id.) Defendants also argue that Plaintiff's claims related to her reclassification as Planning Officer are time-barred. (Id.) Defendants argue that Plaintiff's retaliation claim should be dismissed for failure to state a claim. (Id. at 1-2.) Defendants assert that Plaintiff's official-capacity suits against Individual Defendants should be dismissed as duplicative of those against the City. (Id. at 2.) And finally, that Plaintiff's Title VII claims against Individual Defendants should be dismissed because they are not her employer. (Id.)

Defendants also argue that Plaintiff's failure to respond to several of Defendants' arguments in Defendants' Brief should

be treated as a concession of those arguments. (Defs.' Reply
(Doc. 29) at 1–4.)

Defendants do not move to dismiss Plaintiff's First Claim
as to the City or Plaintiff's Third Claim to the extent that
Plaintiff alleges a violation of her right to equal protection
from discrimination based on race and/or sex. (<u>See</u> Defs.' Br.
(Doc. 19) at 2 n.1.)

## II.  <u>LEGAL STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 570 (2007)). In other words, the plaintiff must
plead facts that "allow[] the court to draw the reasonable
inference that the defendant is liable" and must demonstrate
"more than a sheer possibility that a defendant has acted
unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at
556).

When ruling on a motion to dismiss, a court must accept the
complaint's factual allegations as true. <u>Iqbal</u>, 556 U.S. at 678.
Further, "the complaint, including all reasonable inferences
therefrom, [is] liberally construed in the plaintiff's favor."

Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.,
335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Nevertheless, sufficient factual allegations must "raise a
right to relief above the speculative level" so as to "nudge[]
the[] claims across the line from conceivable to plausible."
Twombly, 500 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680.
A court cannot "ignore a clear failure in the pleadings to
allege any facts which set forth a claim." Estate of Williams-
Moore, 335 F. Supp. 2d at 646. Consequently, even given the
deferential standard allocated to pleadings at the motion to
dismiss stage, a court will not accept mere legal conclusions as
true and "[t]hreadbare recitals of the elements of a cause of
action, supported by mere conclusory statements, [will] not
suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

The court will address each of Defendants' arguments in
turn but will start with Defendants' allegation that Plaintiff
conceded several arguments by failing to respond adequately to
Defendants' Brief.

### A.  **Plaintiff's Failure to Respond to Defendants' Arguments**

Defendants allege that Plaintiff, in her response, failed
to respond adequately to several defense arguments raised in
Defendants' Brief. (Defs.' Reply (Doc. 29) at 1-4.)

The Rules of Practice and Procedure of the United States

District Court for the Middle District of North Carolina (the

"Local Rules") govern submissions to the court. Local Rule

7.3(k) states that "[t]he failure to file a brief or response

within the time specified in this rule shall constitute a waiver

of the right thereafter to file such brief or response, except

upon a showing of excusable neglect." Local Rule 7.2(a) requires

that response briefs shall contain an "argument, which shall

refer to all statutes, rules and authorities relied upon." This

court has construed these rules to cover unresponded-to

arguments as well. See Brand v. N.C. Dep't of Crime Control &

Pub. Safety, 352 F. Supp. 2d 606, 617-18 (M.D.N.C. 2004) ("In

Plaintiff's brief in response to Defendants' motion for summary

judgment, Plaintiff does not address Defendants'[] motion

concerning his hostile work environment claim. By failing to

respond, Plaintiff concedes that he has not stated a hostile

work environment claim."); Kinetic Concepts, Inc. v. ConvaTec

Inc., No. 1:08CV00918, 2010 WL 1667285, at *7-8 (M.D.N.C.

Apr. 23, 2010) (citing various courts' holdings that failure to

address an issue concedes it). Indeed, other courts have

interpreted analogous local rules similarly. See United States

v. Real Prop. Identified as: Parcel 03179-005R, 287 F. Supp. 2d

45, 61 (D.D.C. 2003) (finding that a similar local rule applies

to "specific arguments within a memorandum opposing a motion");
Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 238 F.
Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this
Circuit that when a plaintiff files an opposition to a motion to
dismiss addressing only certain arguments raised by the
defendant, a court may treat those arguments that the plaintiff
failed to address as conceded.").

Defendants contend that Plaintiff failed to respond to the
following arguments: (1) that Plaintiff lacks standing to bring
her disparate impact claim; (2) that Plaintiff has an alleged
constitutionally protected liberty or property interest; (3)
that Plaintiff stated inadequate facts to allege a retaliation
claim against the City; (4) that none of Individual Defendants
qualify as Plaintiff's employer for the purposes of Title VII;
and (5) that Plaintiff failed to address the qualified immunity
argument as to her § 1983 claims against Individual Defendants.
(Defs.' Reply (Doc. 29) at 1-4.)

Here, the court finds that Plaintiff did respond to
argument one, and therefore does not concede it. Plaintiff,
however, has failed to respond to the rest of Defendants'

arguments with anything but conclusory statements unsupported by legal authority.[6]

The court therefore finds that Plaintiff failed to respond to the following of Defendants' arguments in Plaintiff's Corrected Response, (Doc. 26), in a manner conforming to the Local Rules: that Plaintiff has an alleged constitutionally protected liberty or property interest; that Plaintiff stated inadequate facts to allege a retaliation claim against the City; and that Plaintiff failed to address the qualified immunity argument as to her § 1983 claims against Individual Defendants. Plaintiff failed to include an "argument" per Local Rule 7.2(a), and therefore failed to properly file a "brief" in accordance with Local Rule 7.3(k). Due to these failures, the court will deem Plaintiff's arguments on these issues conceded, and Defendants' Partial Motion to Dismiss on these issues will be granted.

---

[6] For example, Plaintiff writes, "It is well-established that, in regard to claims against the individual Defendants in their official capacities, the application of 42 U.S.C. § 1983 to 'persons' does not act as a bar to the claims asserted, nor are they duplicative in the purposes for which they are sought." (Pl.'s Resp. (Doc. 26) at 9.) Plaintiff fails to cite any relied-upon authority to support this assertion, thereby truly nudging a toe over the line of violating Local Rule 7.2(a) in failing to "refer to all statutes, rules and authorities relied upon." Because this court will still address each of Defendants' arguments on the merits, the court merely draws Plaintiff's attention to the local rules for future purposes.

The court nevertheless "has an obligation to review the motions to ensure that dismissal is proper." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014) (citing Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004))

> When deciding a 12(b)(6) motion, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim. This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default.

Pomerleau, 362 F.3d at 145 (internal quotation marks omitted). The court will thus address each of Plaintiff's claims Defendants contest on the merits in turn.

### B.  Plaintiff's Claims Against Individual Defendants in Their Official Capacities — Claims One, Two, Three, Four, Six, and Seven

Because the issue of whether Plaintiff's claims against Individual Defendants in their official capacities determines the course of analysis for several of Plaintiff's claims, the court addresses this issue first.

This court finds that Claims One, Two, Three, Four, Six, and Seven against Individual Defendants in their official capacities are duplicative of the claims against Defendant City, or should be construed as claims against Defendant City, for the

reasons set forth, and will thus be dismissed as against
Individual Defendants in their official capacities.

In Kentucky v. Graham, the Supreme Court noted that
"[o]fficial-capacity suits . . . 'generally represent only
another way of pleading an action against an entity of which an
officer [or employee] is an agent.'" 473 U.S. 159, 165–66 (1985)
(quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55
(1978)); see also Love-Lane v. Martin, 355 F.3d 766, 783 (4th
Cir. 2004) (affirming the district court's holding that an
official-capacity § 1983 claim against a county school board
superintendent is essentially a claim against the board and thus
should be dismissed as duplicative). Therefore, "[a]s long as
the government entity receives notice and an opportunity to
respond, an official-capacity suit is, in all respects other
than name, to be treated as a suit against the entity. Graham,
473 U.S. at 167; Victors v. Kronmiller, 553 F. Supp. 2d 533, 544
(D. Md. 2008) (treating official capacity suit against only
state-employee individuals as a suit against the State, even
though the State was not officially named as a defendant).

Further, in North Carolina, "in a suit where the plaintiff
asserts a claim against a government entity, a suit against
those individuals working in their official capacity for this
government entity is redundant." May v. City of Durham, 136,

N.C. App. 578, 584, 525 S.E.2d 223, 229 (2000); see also Wright v. Town of Zebulon, 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010).

Here, Plaintiff has sued her employer, the City of Mebane, and the City received notice and responded to this suit. Plaintiff does not appear to seriously dispute this issue. As noted, the court will treat the § 1983 claims against Individual Defendants in their official capacities as claims against the City. See Graham, 473 U.S. at 167. Plaintiff's Third and Fourth Claims brought against Individual Defendants in their official capacities are therefore construed as claims against the City, and Plaintiff's First, Second, Sixth, and Seventh claims are duplicative of their claims against the City.[7]

### 1. Plaintiff's Claims for Injunctive Relief Against Individual Defendants in their Official Capacities

With regard to Plaintiff's claims for injunctive relief against Individual Defendants in their official capacities,

---

[7] Because the court has dismissed Plaintiff's Title VII claims against Individual Defendants in their official capacity as duplicative, the court need not address Defendants' argument that Individual Defendants are not Plaintiff's employer for Title VII purposes. See Johnson v. North Carolina, 905 F. Supp. 2d 712, 721 (W.D.N.C. 2012) (dismissing the plaintiff's Title VII official-capacity suit against supervisor as duplicative under Graham). Further, Plaintiff did not respond to this argument and this court sees no basis upon which to find that Individual Defendants are Plaintiff's employer.

Plaintiff argues that Ex Parte Young, 209 U.S. 123, 159 (1908),
applies. (Pl.'s Resp. (Doc. 25) at 8-9.) Ex Parte Young is an
exception to the Eleventh Amendment, which "allows private
citizens, in proper cases, to petition a federal court to enjoin
State officials in their official capacities from engaging in
future conduct that would violate the Constitution or a federal
statute." Antrican v. Odom, 290 F.3d 178, 184 (4th Cir. 2002).

The court finds, however, that the Ex Parte Young doctrine
is inapplicable here. The Eleventh Amendment does not apply to
municipalities. Mt. Healthy City Sch. Dist. Bd. of Educ. v.
Doyle, 429 U.S. 274, 280 (1977); Cash v. Granville Cty. Bd. of
Educ., 242 F.3d 219, 222 (4th Cir. 2001). It thus follows that
Ex Parte Young cannot apply when the Eleventh Amendment cannot
apply; the Eleventh Amendment must necessarily be implicated for
Ex Parte Young to apply. Here, there are no state actors; only
the City and its employees, to which the Eleventh Amendment
explicitly does not apply. See Mt. Healthy City Sch. Dist. Bd.
of Educ., 429 U.S. at 280.

The court thus finds that Plaintiff's claims for injunctive
relief against Individual Defendants in their official capacity
are also duplicative for the same reasons stated above; the
court will dismiss Plaintiff's claims for injunctive relief
against Individual Defendants in their official capacities.

## 2. Official Capacity Claims Conclusion

Plaintiff's First, Second, Third, Fourth, Sixth, and Seventh claims, for damages and injunctive relief, against Individual Defendants in their official capacities will be dismissed.

## C. Individual Defendants in Their Individual Capacities and North Carolina Constitutional Claims

Defendants argue that, to the extent Plaintiff sues Individual Defendants in their individual capacities for violations of the North Carolina Constitution, those claims must be dismissed. The court agrees.

"Claims brought under the North Carolina Constitution may be asserted only against state officials acting in their official capacities." Love-Lane, 355 F.3d at 789 (citing DeWitt v. Mecklenburg Cty., 73 F. Supp. 2d 589, 605–06 (W.D.N.C. 1999); Corum v. Univ. of N.C., 330 N.C. 761, 788, 413 S.E.2d 276, 293 (1992)). The court will therefore dismiss Claims Six and Seven to the extent that they are alleged against Individual Defendants in their individual capacities.

Given that the court has already dismissed Plaintiff's claims against Individual Defendants in their official capacities as duplicative, the court will consider Plaintiff's North Carolina constitutional claims only as against the City.

See <u>Sheaffer v. Cty. of Chatham</u>, 337 F. Supp. 2d 709, 731 (M.D.N.C. 2004) ("While North Carolina does recognize claims under the state constitution against officers named in their official capacities, the claims against Clarke in her official capacity are duplicative of Plaintiff's claims against the county and should be dismissed." (internal citation omitted)).

The court will now address Plaintiff's remaining claims on the merits.

### D.  **Plaintiff's Disparate Impact Claim – Claim Two**

Plaintiff brings a Title VII disparate impact claim under 42 U.S.C. § 2000e against Defendant City and Individual Defendants in their official capacities. (Am. Compl. (Doc. 13) ¶¶ 191-223.) Because the court will dismiss Plaintiff's claims against Individual Defendants in their official capacities as duplicative, the court will consider this claim as solely against Defendant City.

Defendants move to dismiss Plaintiff's Title VII disparate impact claim on the basis of race and/or sex discrimination for lack of standing and failure to exhaust administrative remedies pursuant to Rule 12(b)(1), or, alternatively under Rule 12(b)(6) for failure to state a claim. (Defs.' Br. (Doc. 19) at 4.) For

the reasons set forth, the court will dismiss Plaintiff's Title VII Disparate Impact claim pursuant to Rule 12(b)(6).[8]

### 1. Failure to Exhaust Administrative Remedies

Defendants allege that Plaintiff failed to exhaust her administrative remedies for her disparate impact claim prior to bringing this suit. (Defs.' Br. (Doc. 19) at 11–13.) The court agrees and will grant Defendants' motion to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6).

Defendants move to dismiss this claim under Rule 12(b)(1). (Defs.' Br. (Doc. 18) at 1.) Historically, when a defendant sought to dismiss a complaint for the plaintiff's failure to exhaust administrative remedies, courts evaluated the motion to dismiss under the Rule 12(b)(1) standard, which challenges subject matter jurisdiction. See Kobraei v. Alexander, 521 F. App'x 117, 118 (4th Cir. 2013); Collins v. Wash. Suburban Sanitary Comm'n, Civil No. TJS-17-1530, 2017 WL 5187738, at *1 (D. Md. Nov. 19, 2017) ("Motions to dismiss employment discrimination claims based on a failure to exhaust administrative remedies are typically construed as motions to

---

[8] The Supreme Court recently clarified that Title VII's charge-filing requirement is not jurisdictional and therefore a motion to dismiss for failure to exhaust administrative remedies must be brought under Rule 12(b)(6). Fort Bend Cty. v. Davis, 587 U.S. ____, ____, 139 S. Ct. 1843, 1851 (2019).

dismiss for lack of subject matter jurisdiction . . . .”). The Supreme Court, however, recently held that “Title VII’s charge-filing instruction is not jurisdictional,” but is “properly ranked among the array of claim-processing rules that must be timely raised to come into play.” <u>Fort Bend Cty.</u>, 587 U.S. at ___, 139 S. Ct. at 1846. Title VII’s requirement that Plaintiff file a charge with the EEOC prior to filing a complaint in federal court nevertheless applies. <u>See</u> <u>id.</u> at ___, 139 S. Ct. at 1851 (“Title VII’s charge-filing requirement is a processing rule, albeit a mandatory one . . . .”). Thus, Defendants’ motion will be evaluated under Rule 12(b)(6). <u>See</u> <u>Lee v. Mkt. Am., Inc.</u>, No. 1:18CV1046, 2020 WL 1274226, at *5 (M.D.N.C. Mar. 17, 2020); <u>Cowgill v. First Data Techs., Inc.</u>, Civil Action No. ADC-19-2565, 2020 WL 551913, at *3 (D. Md. Feb. 4, 2020); <u>EEOC v. 1618 Concepts, Inc.</u>, No. 19-cv-672, 2020 WL 87994, at *3 (M.D.N.C. Jan. 7, 2020).

Under the EEOC administrative framework, “an individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act.” <u>Chacko</u>, 429 F.3d at 508. Plaintiff must “describe generally the action or practices complained of.” <u>Id.</u> (quoting 29 C.F.R. § 1601.12(b) (2004)). The Fourth Circuit construes EEOC charges “liberally.” <u>Id.</u> at 509.

If a plaintiff's claims raised under Title VII, however, "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. (quoting Dennis, 55 F.3d at 156).

"[A] plaintiff fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit." Id. at 506. Indeed, the Fourth Circuit has "held that the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Id. at 509.

Here, Plaintiff filed an EEOC Charge, (EEOC Charge (Doc. 13-1)), in which she discussed the job interview at issue, as well as the change in her job and pay classifications. (Id.) She also stated that "the Assistant City Manager notified me that the City was hiring a Development Director . . . . This was an external, not internal, job posting." (Id.) Rather than allege any facially neutral practice, Plaintiff alleges specific, discrete acts of discrimination in her EEOC Charge specifically

directed toward her, allegedly because she is an African-American woman.[9]

A disparate impact claim under Title VII involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

As noted, Plaintiff fails to include any facts of a facially neutral employment practice in the EEOC Charge. The only fact Plaintiff includes which might be construed as an employment practice is that the job posting was posted externally. However, this fact hardly supports her present claim, and is in fact inconsistent with a claim that Defendants rely on "word-of-mouth hiring." Plaintiff's EEOC Charge therefore "reference[s] different . . . discriminatory conduct

---

[9] The parties have not addressed the issue of what activity was timely complained of to the EEOC, but it appears the only claim timely filed in the EEOC Charge is the failure to hire/promote charge arising in 2017. As a result, at this stage of the proceedings, the complained of activity in 2014 and before may be considered as evidence of discriminatory intent, but does not appear to be directly actionable. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (holding that Title VII plaintiffs may use "prior acts [of discrimination] as background evidence in support of a timely claim."). Any timeliness or related issues may be resolved at the summary judgment stage or at trial.

than the central factual allegations in [her] formal suit."
Chacko, 429 F.3d at 506. Further, her "allegation of a discrete
act or acts in [her] administrative charge is insufficient when
[Plaintiff] subsequently alleges a broader pattern of
misconduct." Id. at 509. Plaintiff thus failed to exhaust her
administrative remedies with respect to her disparate impact
claim.

The Fourth and Seventh Circuits have dealt with similar
situations and determined that the plaintiffs failed to exhaust
their administrative remedies. In Abdus-Shahid v. Mayor and City
Council of Balt., 674 F. App'x 267, 274–76 (4th Cir. 2017), the
plaintiff, in his EEOC Charge, only alleged instances of
discrimination against him personally. Id. at 275. When he
brought a Title VII claim, however, he asserted a disparate
impact claim. Id. at 274–75. The Fourth Circuit observed,
"Critically, the EEOC charge does not identify any policy
(neutral or otherwise) being challenged as discriminatory in its
effect . . . . [The plaintiff] also did not assert any facts
that would allow a conclusion that Muslims were being
disproportionately impacted by the City's actions." Id. at 275.
The court concluded that "[t]he problem is that the words used
in the EEOC charge do not correlate to the sort of assertions
and facts from which a future cause of action based on disparate

impact can be discerned," and therefore the plaintiff had failed to exhaust his administrative remedies for a disparate impact claim under Title VII. Id. at 276.

The Seventh Circuit likewise held that a group of plaintiffs failed to exhaust their administrative remedies with regards to one part of their disparate impact complaint. Chaidez v. Ford Motor Co., 937 F.3d 998, 1004-05 (7th Cir. 2019). There, the plaintiffs filed an EEOC Charge focused on discrimination in connection with a basic skills test and the post-test hiring process. Id. When the plaintiffs filed a disparate impact Title VII complaint concerning the test and post-test hiring process, however, they also alleged that the unemployment office from which the defendant hired engaged in discriminatory misconduct. Id. The EEOC Charge did not contain any allegations of misconduct on the unemployment office's part. Id. The Seventh Circuit held that the claims concerning the unemployment office were not "like or reasonably related to the claims in the EEOC charges," and were thus properly dismissed for failure to exhaust administrative remedies. Id. at 1006 (internal quotation marks omitted).

These cases reinforce this court's conclusion that Plaintiff failed to exhaust her administrative remedies with respect to her disparate impact claim. The court will grant

Defendants' motion to dismiss this claim under Rule 12(b)(6) as against Defendant City.

### 2. **Failure to State a Claim**

Alternatively, Defendants allege Plaintiff fails to state a disparate impact claim. (Defs.' Br. (Doc. 19) at 7–10.) Because Plaintiff failed to exhaust her administrative remedies for a disparate impact claim, the court will not reach the issue of whether or not Plaintiff sufficiently pled a disparate impact claim.

### E. **Plaintiff's § 1983 Claims – Claims Three, Four, and Five**

Plaintiff's Third and Fourth Claims allege § 1983 claims against Individual Defendants, in their individual and official capacities, for deprivation of a constitutionally protected liberty interest and a constitutionally protected property interest, respectively. This court will construe Claims Three and Four against Individual Defendants in their official capacity as claims against Defendant City. See Graham, 473 U.S. at 167.

Plaintiff's Fifth Claim is a § 1983 claim against Defendant City, alleging that the City, through the acts of Defendant Rollins as Assistant City Manager, retaliated against Plaintiff for filing an EEOC charge, in violation of the United States

Constitution and the North Carolina Constitution. (Am. Compl.
(Doc. 13) ¶¶ 283, 285, 288.)

Regarding Claims Three and Four, to the extent that
Plaintiff might be able to allege a claim based on her
reclassification, Defendants argue those § 1983 claims are time-
barred. (Defs.' Br. (Doc. 19) at 4, 14.) As there is no federal
statute of limitation for a § 1983 claim, the court must look to
analogous state law for a statute of limitations. See Nat'l
Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir.
1991) ("Because there is no federal statute of limitations
applicable to suits under § 1983, it is the rule that the
applicable provision limiting the time in which an action [under
§ 1983] must be brought, must be borrowed from the analogous
state statute of limitations." (alteration in original)
(internal quotation marks omitted)). The statute of limitations
in North Carolina for 42 U.S.C. § 1983 actions is three years.
Id. at 1162. The cause of action accrues when a plaintiff "knows
or has reason to know of the injury which is the basis of the
action." Id. (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir.
1975)).

The original complaint was filed on March 5, 2018, and
Defendants reclassified Plaintiff in 2014, (Am. Compl. (Doc. 13)
¶ 65), over three years before this lawsuit was filed. Because

Plaintiff clearly knew of this injury when it originally occurred in 2014, Plaintiff's claims deriving from this action under § 1983 are time-barred.

Defendants argue that Plaintiff fails to sufficiently allege a constitutionally protected liberty or property interest regarding Plaintiff's Third and Fourth Claims. (Defs.' Br. (Doc. 19) at 16, 18.) The court finds Plaintiff failed to respond to this argument in her response brief and has thus conceded these issues. This court also agrees with Defendants on the merits that Plaintiff had no constitutionally protected liberty or property interest for the reasons stated herein.

After addressing Plaintiff's Third and Fourth Claims, the court will then address Plaintiff's Fifth Claim.

### 1. Plaintiff's Deprivation of Constitutionally Protected Liberty Interest — Claim Three

In Claim Three, Plaintiff alleges equal protection violations as well as due process violations depriving her of a constitutionally protected liberty interest. (Am. Compl. (Doc. 13) ¶¶ 231, 233, 238, 246, 248.)

Because Defendants do not move to dismiss Plaintiff's Third Claim to the extent that Plaintiff alleges a violation of her right to equal protection from discrimination based on race and/or sex, (see Defs.' Br. (Doc. 19) at 2 n.1.), the court

focuses only on the alleged due process violations resulting in
a liberty interest deprivation.

A plaintiff may plead a due process violation when
"governmental action threatens [her] liberty interest in [her]
reputation and choice of occupation." Ridpath v. Bd. of
Governors Marshall Univ., 447 F.3d 292, 307 (4th Cir. 2006). A
plaintiff may only succeed in pleading a deprivation of a
constitutionally protected liberty interest when her employer
"make[s] any charge against [her] that might seriously damage
[her] standing and associations in [her] community," or "imposed
on [her] a stigma or other disability that foreclosed [her]
freedom to take advantage of other employment opportunities."
Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972). Further, "an
injury to reputation alone does not deprive an individual of a
constitutionally protected liberty interest." Tigrett v. Rector
& Visitors of Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002)
(citing Siegert v. Gilley, 500 U.S. 226, 233 (1991)). "Instead,
a plaintiff must demonstrate that h[er] reputational injury was
accompanied by a state action that 'distinctly altered or
extinguished' h[er] legal status if [s]he wants to succeed."
Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir.
2012) (quoting Paul v. Davis, 424 U.S. 693, 711 (1976)).

As noted, Plaintiff's reclassification from director to officer is time-barred as a source for § 1983 claims and therefore cannot serve as a basis for this claim.

Alternatively, Plaintiff does not plead facts plausibly indicating Defendants imposed a stigma foreclosing her freedom to take advantage of other employment opportunities on Plaintiff when they interviewed her for the Development Director position, nor does Plaintiff plead facts that her legal status changed due to her not getting the Development Director position sufficient to establish a liberty interest. See Roth, 408 U.S. at 573; Shirvinski, 673 F.3d at 315.

Further, regarding the City's liability, the Supreme Court has recognized that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). Here, Plaintiff alleges Individual Defendants committed arbitrary and capricious acts "in their official capacities as municipal policy makers." (Am. Compl. (Doc. 13) ¶ 230.) Nevertheless, the court has already found that Plaintiff has not submitted sufficient facts to plausibly allege a liberty deprivation at the hands of Individual Defendants in their individual capacities; Plaintiff cannot plausibly allege municipal liability on the same deficient set of facts.

Plaintiff's claim for a constitutionally protected liberty interest will therefore be dismissed as against Individual Defendants in their individual capacities and as against the City pursuant to Rule 12(b)(6).

### 2. Plaintiff's Deprivation of Constitutionally Protected Property Interest — Claim Four

Plaintiff's Fourth Claim alleging due process violations resulting in a property interest deprivation is similarly without merit.[10] The court will treat this claim as against Individual Defendants in their individual capacities and as against the City.

A plaintiff may have a property interest in employment protected by procedural due process. See Roth, 408 U.S. at 576. State law creates the property interest when it creates a "legitimate claim of entitlement" to certain employment benefits. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978). The state creates the claim of entitlement, but the Federal Constitution protects against the arbitrary deprivation

---

[10] While Plaintiff's Fourth Claim alleges a property interest deprivation, much of Plaintiff's discussion of the interest at issue for her Fourth Claim for Relief is dedicated to her liberty interests, (see Am. Compl. (Doc. 13) ¶¶ 253–55), and thus is inapplicable to her claim for a property interest deprivation. Indeed, Plaintiff only specifically mentions her property interests once in her Fourth Claim. (Id. ¶ 252.)

of benefits included in the state-created property interest. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985).

"[W]here a property interest . . . is claimed to be derived from state law sources, it is obviously necessary to look to those sources to determine the general nature of the interest, for the process constitutionally due is dependent upon that." <u>Siu v. Johnson</u>, 748 F.2d 238, 244 (4th Cir. 1984) (citations omitted).

North Carolina law does not provide Plaintiff with the property interest entitlement she seeks. "At-will employees have no property interests in their employment cognizable under the due process clause." <u>Privette v. Univ. of N.C.</u>, 96 N.C. App. 124, 137, 385 S.E.2d 185, 192 (1989). "[A]bsent a contractual agreement specifying a definite period of employment, only 'a statute or ordinance may create a property interest in continued employment.'" <u>Wilkins v. Guilford Cty.</u>, 158 N.C. App. 661, 668, 582 S.E.2d 74, 78 (2003) (quoting <u>Kearney v. Cty. of Durham</u>, 99 N.C. App. 349, 351, 393 S.E.2d 129, 130 (1990)).

Plaintiff does not allege that she signed an employment contract nor does she allege the existence of a statute or ordinance creating a property interest. Any property interest would therefore have to be based in another contract.

Plaintiff alleges that the City's employee handbook created an implied contract which created her property interest. (Am. Compl. (Doc. 13) ¶¶ 164, 252.) "Employee handbooks may form the basis of a property right if they are included in the employee's employment contract, or in the case of local government, enacted as ordinances." Hinton v. Conner, 366 F. Supp. 2d 297, 311 (M.D.N.C. 2005) (citing Wuchte v. McNeil, 130 N.C. App. 738, 741, 505 S.E.2d 142, 144 (1998)); see also Bishop v. Wood, 426 U.S. 341, 344 (1976) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract."). However, "unilaterally promulgated employee manuals or personnel memoranda do not create a property interest in continued employment." Wuchte, 130 N.C. App. at 741, 505 S.E.2d at 144-45.

Plaintiff neither alleges that the City's employee handbook was included as part of her contract nor that the handbook was enacted as an ordinance. Indeed, the employee handbook explicitly states that "[t]his handbook . . . should not be read as . . . forming an . . . implied contract." (Am. Compl. (Doc. 13) ¶ 161.) Plaintiff therefore cannot successfully make out a

claim for the deprivation of a liberty interest created by the employee handbook.[11]

Plaintiff also alleges that "the City's established patterns and practices" gave rise to an implied contract creating her property interest. (Id. ¶ 252.) This contention is a stronger argument, but Plaintiff's claim still fails for failure to adequately plead sufficient facts.

A "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support [her] claim of entitlement to the benefit and that [she] may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 601 (1972). Plaintiff, in pleading the creation of an implied contract out of "the City's established patterns and practices," fails to elaborate on what those patterns and practices are. (Am. Compl. (Doc. 13) ¶ 252.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Here, there are

---

[11] Even if the City's employee handbook did create some type of implied contract, at most that contract would protect a person in their current position. Plaintiff does not persuasively argue that the handbook creates a liberty interest in obtaining a prospective position.

insufficient facts pled to allow the court to determine (1) which patterns and practices gave rise to an implied contract, and (2) that these patterns and practices alleged did indeed create an implied contract for the purposes of assessing Plaintiff's complaint pursuant to a motion to dismiss under Rule 12(b)(6). Indeed, Plaintiff even alleges that "[w]hen Plaintiff was denied the Assistant City Manager position, she asked Bennett if she could file a grievance or appeal of the decision; no such policy or procedure existed." (Am. Compl. (Doc. 13) ¶ 54) (emphasis added).

Plaintiff thus fails to allege sufficient factual allegations of other patterns or policies creating an implied contract to "raise a right to relief above the speculative level" so as to "nudge[] the[] claim[] across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680. Plaintiff's Fourth Claim for a violation of her constitutionally guaranteed property interest will be dismissed as against Individual Defendants in their individual capacities and as against the City pursuant to Rule 12(b)(6).

### 3. Individual Defendants in Their Individual Capacities and Qualified Immunity

Individual Defendants sued in their individual capacity allege they are entitled to qualified immunity on Plaintiff's

Third and Fourth Claims alleging constitutional deprivations under § 1983. (Defs.' Br. (Doc. 19) at 19–20.) The court finds Plaintiff failed to respond to this argument in her response brief and has thus conceded this issue. The court will still address the issue on the merits.

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009).

State officials sued in their individual capacities are "persons" within the meaning of § 1983 and are not absolutely immune from suit. Hafer v. Melo, 502 U.S. 21, 31 (1991). A government official sued in their individual capacity under § 1983 may, however, be entitled to qualified immunity. Id. at 25 ("[O]fficials sued in their personal capacities . . . may assert personal immunity defenses such as objectively reasonable reliance on existing law.").

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting

- 44 -

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Defendant officials have the burden of pleading and proving qualified immunity. See, e.g., Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 332 n.10 (4th Cir. 2009); Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003).

In determining whether qualified immunity applies, courts must engage in a two-step test "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." Gregg v. Ham, 678 F.3d 333, 338–39 (4th Cir. 2012) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). This test, however, need not proceed in this sequence; "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

Because Plaintiff has failed to allege a constitutional violation in either Claim Three or Claim Four, Individual

Defendants in their individual capacities are entitled to qualified immunity.[12]

### 4. Plaintiff's § 1983 Claim for Retaliation — Claim Five

This court finds that Plaintiff's claim for retaliation against the City under § 1983 fails.

Plaintiff alleges that Defendant Rollins' negative comments on Plaintiff's performance review after Defendant Rollins had learned of Plaintiff's EEOC complaint were retaliatory. (Am. Compl. (Doc. 13) ¶¶ 278–88.) Plaintiff alleges that "as Assistant City Manager, employment acts of Rollins constitute City policy." (Id. ¶ 283.)

Defendants argue that Plaintiff's allegations are insufficient to impose municipal liability on the City under Monell. (Defs.' Br. (Doc. 19 at 24.) Plaintiff failed to respond to this argument in her response brief and has thus conceded this issue. The court also finds Plaintiff fails to plausibly allege a claim for retaliation under § 1983 on the merits.

---

[12] "There is support for the position that in the absence of a constitutional violation, a defendant prevails not because of qualified immunity but because the plaintiff has failed to demonstrate an essential element of a section 1983 claim. In any event, the result is the same here." Swick v. Wilde, No. 1:10-cv-303, 2012 WL 3780350, at *9 n.15 (M.D.N.C. Aug. 31, 2012) (citing Henry v. Purnell, 501 F.3d 374, 378 n.3 (4th Cir. 2007)).

"[A] municipality may be subject to liability under section 1983 if the alleged injury was caused by an identifiable municipal policy or custom." Riddick v. Sch. Bd. of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). When "individuals 'whose edicts or acts may fairly be said to represent official policy'" create an alleged constitutional deprivation, the municipality may be subject to liability under § 1983. Id. at 523 (quoting Monell, 436 U.S. at 694). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 482. "To qualify as a final policymaking official, a municipal official must have the responsibility and authority to implement final municipal policy with respect to a particular course of action." Riddick, 238 F.3d at 523 (internal quotation marks omitted).

"The question of who possesses final policymaking authority is one of state law." Id. The court must look to "relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." Id. (internal quotation marks omitted).

"[I]t is true that a municipality may delegate its final policymaking authority to other officials or governing bodies, we must never "assum[e] that municipal policymaking authority

lies somewhere other than where the applicable law purports to put it." <u>Hunter v. Town of Mocksville</u>, 897 F.3d 538, 555 (4th Cir. 2018) (citation omitted) (quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 126 (1988)). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." <u>City of St. Louis</u>, 485 U.S. at 127.

Plaintiff therefore must demonstrate that Defendant Rollins qualifies as a final policymaking official in order to defeat a motion to dismiss. Plaintiff fails to provide any evidence at all that Defendant Rollins' decisions qualify as "final municipal policy," or that Defendant Rollins is himself a final policymaking official.

Plaintiff alleges that "[a]ccording to the City Handbook, performance evaluations are conducted for all probationary and full-time status employees and should be performed by the employee's immediate supervisor who is most familiar with the employee's work." (Am. Compl. (Doc. 13) ¶ 275.) Further, the policy as set out in the City Handbook states that "[t]he evaluation session is intended to provide an opportunity for the employee to receive the supervisor's assessment of the employee's work performance," and that "[t]he evaluation

determines if performance is satisfactory. (Id.) Here, Plaintiff alleges that Defendant Rollins "provided false negative feedback on Plaintiff's evaluation," and "the negative comments and criticism removed by Stober were not intended to provide Plaintiff an opportunity for her to receive her supervisor's assessment of her work performance." (Id. ¶¶ 278, 280.)

Taking Plaintiff's allegations as true reveals that the City Handbook policy concerning performance evaluations is the "act of the municipality," not Defendant Rollins' "departure[] from" the City Handbook policy; Defendant Rollins meant for his performance evaluation to punish Plaintiff, not to determine whether Plaintiff's performance was satisfactory. This act thus departs from the purpose of the policy and no longer qualifies as an act of the City.

Plaintiff further alleges no facts to support the notion that the City delegated to Defendant Rollins the authority to create and implement policy concerning performance evaluations. Defendant Rollins was therefore "constrained by policies not of [his] making." City of St. Louis, 485 U.S. at 127. Instead, Plaintiff states that "[a]s Assistant City Manager, employment acts committed by Rollins constitute City policy." (Am. Compl. (Doc. 13) ¶ 283.) This is the sort of "'naked assertion[]' devoid of 'further factual enhancement'" that Twombly and Iqbal

sought to eradicate. Iqbal, 556 U.S. at 679 (quoting Twombly, 550 U.S. at 557).

This is a situation where an "official's discretionary decisions are constrained by policies not of that official's making," and therefore, "the subordinate's departures from" those polices do not constitute the acts of the municipality. City of St. Louis, 485 U.S. at 127.

Because Plaintiff fails to provide "further factual enhancement" for her claim that Defendant Rollins is a final policymaking official, her retaliation claims under § 1983 must fail.

## F.    Plaintiff's Due Process Claims under North Carolina Constitution — Claims Six and Seven

Plaintiff pleads analogous liberty and property deprivations under Article 1, §§ 1, 19 of the North Carolina Constitution. (Am. Compl. (Doc. 13) ¶¶ 291–322.) Plaintiff's Sixth and Seventh Claims are analogous to Claims Three and Four but are brought under N.C. Const. art. I, §§ 1, 19. (Id. ¶¶ 225–27, 252–54, 291, 312–14.) Defendants move to dismiss these claims pursuant to Rule 12(b)(6), arguing that Plaintiff alleges no violation of a property or liberty interest protected by due process. (Defs.' Br. (Doc. 19) at 4, 13–18.) The court finds Plaintiff failed to respond to this argument in her response brief and has thus conceded these issues. The court will

nevertheless address Plaintiff's North Carolina Constitution
claims on the merits.

### 1. <u>Article 1, § 1 — Claim Six</u>

Plaintiff alleges a deprivation of a constitutionally
protected liberty interest under § 1. Defendants argue that this
claim should be dismissed for failure to allege a violation of a
"clear, established rule." (Defs.' Br. (Doc. 19) at 21.) The
court finds Plaintiff failed to respond to this argument in her
response brief and has thus conceded this issue.

Article 1, § 1 of the North Carolina Constitution states
that "all persons are created equal; that they are endowed by
their Creator with certain inalienable rights; that among these
are life, liberty, the enjoyment of the fruits of their own
labor, and the pursuit of happiness." Generally, the provision
protects "the right of the individual to be free to enjoy the
faculties with which he has been endowed by his Creator, to live
and work where he will, to earn his livelihoo[d] by [any] lawful
calling, and to pursue any legitimate business, trade or
vocation." <u>State v. Warren</u>, 252 N.C. 690, 693, 114 S.E.2d 660,
663 (1960).

The North Carolina Supreme Court has interpreted § 1 to
create a constitutionally protected liberty interest. <u>Tully v.</u>
<u>City of Wilmington</u>, 370 N.C. 527, 534–35, 810 S.E.2d 208, 214–15

(2018). Further, "Article 1, Section 1 also applies when a
governmental entity acts in an arbitrary and capricious manner
towards one of its employees by failing to abide by promotional
procedures that the employer itself put in place." Id. at 535–
36, 810 S.E.2d at 215 (collecting cases) (noting "that other
courts have recognized the impropriety of government agencies
ignoring their own regulations"). To succeed on a § 1 claim, the
court in Tully held:

> a public employee must show that no other state law
> remedy is available and plead facts establishing three
> elements: (1) a clear, established rule or policy
> existed regarding the employment promotional process
> that furthered a legitimate governmental interest; (2)
> the employer violated that policy; and (3) the
> plaintiff was injured as a result of that violation.
> If a public employee alleges these elements, he has
> adequately stated a claim that his employer
> unconstitutionally burdened his right to the enjoyment
> of the fruits of his labor.

Id. at 537, 810 S.E.2d at 216.

Plaintiff argues two violations of the two allegedly
established policies as the bases for her § 1 claim. First that
"Defendants failed to make the appointment and/or promotion to
the Development Director position on the basis of each
candidate's merit and fitness," and second that "Plaintiff was
deprived of employment opportunities or otherwise adversely
affected as an employee because of her race, color, and/or sex."
(Am. Compl. (Doc. 13) ¶¶ 295, 297.) The court will address each

alleged violation, starting with the alleged discrimination
based on her race, color, and/or sex.

a.   **Deprivation Due to Discrimination**

Plaintiff alleges that Defendants violated the City's
policy, which states that "[n]o applicant for City employment or
employee shall be deprived of employment opportunities or
otherwise adversely affected as an employee because of such
individual's race, color . . . [or] genetic information . . . ."
(Id. ¶ 293.)

Before reaching the three Tully elements, Plaintiff must
first show that "no other state law remedy is available." Tully,
370 N.C. at 537, 810 S.E.2d at 216. Plaintiff alleges that "[n]o
adequate state remedy exists for these state constitutional
violations and damages suffered by Plaintiff." (Am. Compl. (Doc.
13) ¶ 307.) The court disagrees.

The court finds that Plaintiff's § 1 claim based on
discrimination is essentially an equal protection claim that is
more properly brought under N.C. Const. art. I, § 19. § 19
provides that:

> No person shall be taken, imprisoned, or
> disseized of his freehold, liberties, or privileges,
> or outlawed, or exiled, or in any manner deprived of
> his life, liberty, or property, but by the law of the
> land. No person shall be denied the equal protection
> of the laws; nor shall any person be subjected to
> discrimination by the State because of race, color,
> religion, or national origin.

N.C. Const. art. I, § 19. While Plaintiff's claim may seem to address the violation of a policy regarding the employment promotional process, upon closer inspection, the policy addresses a situation § 19 contemplates: When an employee is deprived of employment opportunities due to racial discrimination in the employment setting.[13] See Sheaffer, 337 F. Supp. 2d at 730 (examining disability discrimination in the employment context under N.C. Const. art. I, § 19); Disher v. Weaver, 308 F. Supp. 2d 614, 626-27 (M.D.N.C. 2004) (considering racial discrimination in the employment setting under N.C. Const. art. I, § 19).

Thus, because Plaintiff's § 1 claim could be brought under § 19, Plaintiff may not base her § 1 claim upon charges of

---

[13] The court acknowledges that even if Plaintiff brought an equal protection claim under § 19, she would still need to demonstrate a lack of an adequate state law remedy. See Sheaffer, 337 F. Supp. 2d at 730. The court notes that neither of North Carolina's employment discrimination statutes, N.C. Gen. Stat. § 143-422.2 nor N.C. Gen. Stat. § 126-16, would likely apply to Plaintiff, because she was not wrongfully terminated, see McLean v. Patten Cmtys., Inc., 332 F.3d 714, 720 (4th Cir. 2003) (noting that N.C. Gen. Stat. § 143-422.2 only applies to common law wrongful discharge suits), nor does her employment with the Planning & Zoning Department for the City qualify her for the protection of N.C. Gen. Stat. § 126-16, see N.C. Gen. Stat. § 126-5; Conran v. New Bern Police Dep't, 122 N.C. App. 116, 118-19, 468 S.E.2d 258, 259-60 (1996) (holding that § 126-5 did not cover the plaintiff as a police officer).

racial discrimination. The court will turn to the City's alleged violation of its policy to promote based on merit and fitness.

### b. <u>Deprivation Due to Failure to Hire Based on Merit and Fitness</u>

Plaintiff argues that "Equal employment policies such as [the merit and fitness policy] set forth in the Handbook serve a legitimate government interest of providing a fair procedure that ensures qualified candidates are advanced throughout the hiring and/or promotional process." (Am. Compl. (Doc. 13) ¶ 294.)

The court first finds that there is no other state law remedy available. For the first prong, Plaintiff alleges that Defendants violated the "established policy" set forth in the handbook stating that "'[a]ll appointments and promotions shall be made on the basis of merit and fitness.'" (<u>Id.</u> ¶ 293.)

Defendants contend that Plaintiff fails to allege a violation of "a clear, established rule or policy." (Defs.' Br. (Doc. 19) at 21.) Defendants contend that Plaintiff's § 1 claim "asks the Court to determine whether she should have received the promotion on the merits, on the basis that she had a protected interest in receiving it." (<u>Id.</u>)

The court in <u>Tully</u> observed that the existing authority in this area is "admittedly sparse." <u>Tully</u>, 370 N.C. at 536, 810 S.E.2d at 216. The court thus finds that, in light of the sparse

precedent on this issue and absent any argument by Plaintiff explaining why that rule is sufficiently clear to permit enforcement under § 1 as interpreted by Tully, the court must find that Plaintiff has failed to plausibly allege a "clear, established rule," and the court will dismiss this claim.

## 2. Article 1, § 19 — Claim Seven

Plaintiff alleges both liberty and property deprivations under § 19, which fail. (Id. ¶¶ 312, 314.) Defendants argue that Plaintiff cannot plausibly allege constitutionally protected liberty or property interest. (Defs.' Br. (Doc. 19) at 13-14, 23.) Plaintiff failed to respond to this argument and has therefore conceded these issues. Further, the court finds that Plaintiff's claim also fails on the merits.

Article 1, § 19 of the North Carolina Constitution provides for equal protection and due process. The North Carolina Supreme Court interprets the Fourteenth Amendment of the Federal Constitution and Article 1, § 19 of the North Carolina Constitution conterminously. See Tri-Cty. Paving, Inc. v. Ashe Cty., 281 F.3d 430, 436 n.6 (4th Cir. 2002); State v. Bryant, 359 N.C. 554, 563, 614 S.E.2d 479, 485 (2005); Rhyne v. K-Mart Corp., 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004).

Plaintiff's liberty and property deprivation claims fail under § 19. Because the North Carolina Constitution and the

Federal Constitution are interpreted conterminously, see Tri-Cty. Paving, 281 F.3d at 436 n.6, and Plaintiff's claims for deprivations of constitutionally protected liberty and property interests fail under the Federal Constitution, Plaintiff's claims must fail here for the aforementioned reasons. See supra Part III.E.1-2; see also Munn-Goins v. Bd. of Trs. of Bladen Cmty. Coll., 658 F. Supp. 2d 713, 731 (E.D.N.C. 2009).

The court also notes that, even if Plaintiff had not brought Federal Constitution claims, the North Carolina Supreme Court has held that there is no constitutionally protected property interest in a promotion under § 19 and thus Plaintiff could not state a claim under § 19 for a property interest for failing to be promoted.[14] Tully, 370 N.C. at 539, 810 S.E.2d at 219.

The court will therefore dismiss Plaintiff's § 19 claim against the City under Rule 12(b)(6).

## IV.  CONCLUSION

Defendants' partial motion to dismiss is granted or denied as to each of the claims and parties as set forth hereinabove. Neither party has addressed the Eighth or Ninth Claims for relief in these briefs. However, Plaintiff's Eighth

---

[14] The court also notes that Plaintiff has not alleged a discrimination claim under § 19.

and Ninth claims for relief are requests for attorney's fees under applicable federal and state law. Those requests are not separate claims for relief under Fed. R. Civ. P. 8(a)(1) but are instead demands for relief under 8(a)(3). Relief under either of those designated claims is not ripe until the conclusion of the case and only upon motion by a prevailing party. Those claims are construed as prayers for relief rather than independent claims and not addressed at this time.

The following claims remain for resolution at summary judgment or trial: Plaintiff's First Claim against Defendant City of Mebane; and Plaintiff's Third Claim against the Individual Defendants in their individual capacities and Defendant City of Mebane, regarding an equal protection violation from discrimination based on race and/or sex.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion to Dismiss, (Doc. 18), is **GRANTED** as to Claims One, Two, Three, Four, Six, and Seven as to David Cheek, Christopher Rollins, and Esther Bennett ("Individual Defendants") in their official capacities.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion to Dismiss, (Doc. 18), is **GRANTED** as to Claim Three as to a deprivation of a constitutionally protected liberty interest,

and Claims Four, Six, and Seven as to Individual Defendants in their individual capacities under Rule 12(b)(6). Plaintiff's Third Claim regarding an equal protection violation as to Individual Defendants in their individual capacities remains for resolution.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion to Dismiss, (Doc. 18), is **GRANTED** as to Claim Three as to a deprivation of a constitutionally protected liberty interest, and Claims Two, Four, Five, Six, and Seven as to Defendant City of Mebane under Rule 12(b)(6). Plaintiff's Third Claim regarding an equal protection violation as to Defendant City of Mebane remains for resolution.

This the 31st day of March, 2020.

_____
United States District Judge